```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF IOWA
                         CENTRAL DIVISION

THOMAS B. MALLORY,                  )
                                    )     4:06-CV-208-REL-RAW
          Plaintiff,                )
                                    )
vs.                                 )     REPORT AND RECOMMENDATION
                                    )     ON DEFENDANTS' MOTION
JAMES PAYNE; NANCY WEBB; BRAD       )     FOR SUMMARY JUDGMENT
RICHARDS; MARGARET SHIPELY,         )
Individually and in their           )
Official Capacities,                )
                                    )
          Defendants.               )
```

Before the Court is defendants' motion for summary judgment [57]. Plaintiff Thomas B. Mallory was an inmate at the Clarinda Correctional Facility (CCF) in Clarinda, Iowa. On May 11, 2006 Mr. Mallory filed a pro se complaint stating a claim under 42 U.S.C. § 1983, which the Court has construed as pleading claims under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution arising from various incidents involving the handling of his mail at CCF.  Mr. Mallory sought declaratory relief and injunctive relief prohibiting defendants Shipely and Webb from working in the CCF mailroom and defendants Payne and Richards from responding to his complaints about mail at CCF. He also sought punitive damages and unspecified other relief which, interpreting the Complaint liberally, the Court has assumed includes compensatory damages in some amount.

Jurisdiction is predicated on 28 U.S.C. § 1331, 1343(a)(3), and 1343(a)(4). This case was referred to the undersigned on February 8, 2008, for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B). The matter is determined on the motion papers. See LR 7.c.

**I.**

**SUMMARY JUDGMENT**

Defendants are entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that [defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.

Carter v. St. Louis University, 167 F.3d 398, 400 (8th Cir. 1999); see Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006)("A party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims."). The Eighth Circuit has previously observed that "[s]ummary judgment is appropriate where there is no independent evidence, other than petitioner's unsubstantiated allegations." Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc., 162 F.3d 991, 997 (8th Cir. 1998); see Senty-Haugen v. Goodno, 462 F.3d 876, 891 (8th Cir. 2006)(inmate's contention was supported only by his own allegations).

## II.

## FACTUAL BACKGROUND

The motion for summary judgment is not resisted in the manner required by Local Rule 56.b. On February 19, 2008 Mr. Mallory filed a "Motion for Laches of Estoppel" [61] in which he asked the Court not to consider defendants' resistance to his summary judgment motion, not to permit defendants to file a motion for summary judgment out of time, and stated he resisted defendants' motion for summary judgment though he did not address defendants' arguments. In a ruling entered February 22, 2008 the first two requests were denied as moot, the Court having previously denied Mr. Mallory's summary judgment motion and granted the defendants leave to file their motion out of time. The Court noted that as a response to defendants' summary judgment motion Mr. Mallory's resistance was incomplete because he had not responded to defendants' statement of undisputed material facts nor filed a responsive brief. The Court told Mr. Mallory his deadline for response to defendants' summary judgment motion was March 3, 2008 and allowed him to supplement his response by then to meet the requirements of the local rules. Mr. Mallory has not supplemented his response with the result defendants' statement of undisputed facts has not been contested and should be taken as true. *See* LR 56.b.

Plaintiff Thomas B. Mallory has been in and out of the custody of the Iowa Department Corrections (IDOC) since 1985. His most recent incarceration started on March 18, 2005. From April 26, 2005 until September 13, 2007 Mr. Mallory was incarcerated at CCF, after which he was transferred to the Newton Correctional Facility and from there to the North Central Correctional Facility in Rockwell City, Iowa. (Def. App. at 2-3).

Defendant Jim Payne is the Security Director at CCF. Defendant Margaret Shipely is an employee of CCF who works in the mailroom. Defendant Nancy Webb is a correctional officer at CCF who occasionally works in the mailroom. Defendant Brad Richards is the Administrative Law Judge at CCF.

Like all IDOC institutions CCF has a "Grievance Resolution Process." (Def. App. at 32). The grievance procedure provides that, after attempting informal resolution, an inmate may file a written grievance on a form provided by the institution. A designated grievance officer must respond to the grievance within a stated period of time. If dissatisfied with the response, the inmate may appeal to the warden of the institution within fifteen days. The warden's decision in turn may be appealed to a "Grievance Appeal Coordinator" at IDOC's Central Office whose decision is final. (Id. at 35-37, 50).

According to a grievance Mr. Mallory filed, on October 5, 2005 the institution received a letter from a hospital marked

"Privileged Correspondence" addressed to Mallory with his inmate number on the envelope. Mailroom employee Shipely directed the letter to CCF Health Services, which kept the letter for at least a day before sending it on to Mallory. The letter was sealed when Mr. Mallory received it, but because there were only four pages inside the envelope and the envelope was marked with extra postage, Mallory believed Health Services staff had removed medical records which he thought must have been included with the letter. (Def. App. at 4-5). Mr. Mallory had requested medical records from the hospital in connection with an unrelated pending lawsuit. He filed a grievance concerning the handling of his mail and asked that Ms. Shipely be relieved of her duties. (Id.) Brad Richards denied Mallory's grievance, noting that all medical letters were routinely "routed through Health Services, to make sure that offenders are not given letters from Hospitals/Clinics that have pending appointments." (Id. at 7). Richards also noted that Mallory admitted receiving the letter sealed. (Id.) Mallory did not appeal the denial of his grievance.

On March 10, 2006, Mr. Mallory was called to the CCF mailroom by defendant Webb. Ms. Webb gave him a letter from U.S. Senator Tom Harkin's office addressed to Mallory which had been opened. Ms. Webb told Mr. Mallory she had mistakenly opened the letter with the machine letter opener. (Def. App. at 8-9). Mallory filed a grievance concerning this incident on March 20, 2006. (Id.)

Mr. Richards denied the grievance on the basis that Ms. Webb had called Mallory to the mailroom immediately after she realized her mistake, instead of waiting for the normal time to hand out legal mail, and it was obvious the letter had been opened by the machine opener. Mr. Richards agreed a mistake had been made and told Mr. Mallory mailroom staff had been reminded that "confidential/legal mail . . . is to be opened in the presence of the offenders." (Id.) Mallory appealed to the Warden, who denied his appeal (id. at 12-13) and then to the IDOC Central Office, which also denied his appeal. (Id. at 14-19).

On May 8, 2006 Mallory submitted a "store order for postage" in connection with mail he was sending out. He requested a return receipt. (Def. App. at 20-21). The business office evidently misunderstood this as a request to send the letter certified, which cost Mallory more. (Id.) On May 10, 2006 Mallory filed a grievance about the mistake and asked he be reimbursed for the extra amount of money spent sending his mail certified. Mr. Richards denied this grievance, indicating that Mallory's reference to "'request return receipt of postage,' was the only way for the business office to interpret . . . and . . . send the mail . . . ." (Id. at 23). Mallory did not appeal the grievance decision.

On May 11, 2006 Mr. Mallory commenced this action.

On August 25, 2006 Mr. Mallory was notified by Ms. Shipely that he had legal mail to pick up. (Def. App. 24). When Mr.

Mallory received his mail, from the Clerk of U.S. District Court, there was only tape holding the flap sealed and there was no postage on it. (Id. at 25). He believed this was proof his mail had been opened outside his presence in violation of prison mail rules. Mr. Mallory filed a grievance, which was denied by Mr. Richards because Mallory had not attempted informal resolution. Mallory took no further action with respect to this grievance.

On April 13, 2007 Mr. Mallory submitted another grievance about alleged opening of his legal mail. He was called to the mailroom to pick up correspondence from the Iowa Supreme Court. When he received the letter he noted that it had been opened outside his presence. He asked that Ms. Shipely be required to write a letter to the Iowa Attorney General explaining her actions and that she be replaced. (Def. App. at 28-30). The grievance was "partially sustained." Mr. Mallory was told the matter had been turned over to administrative staff for investigation but that Ms. Shipely would not be required to write to the Attorney General as Mallory had requested. (Id. at 31). Mallory did not appeal the decision.

Mr. Mallory did not submit any other grievances at CCF concerning the handling of his mail. (Def. App. at 58-59).

## III.

## DISCUSSION

In his complaint Mr. Mallory alleges his constitutional rights were violated in connection with the alleged interference with his mail from the hospital and the opening of the letter from Senator Harkin. He also claims correspondence from the Iowa Civil Liberties Union, his attorney, the Iowa Department of Public Health and a state judge have improperly been opened outside of his presence. Defendants move for summary judgment on a number of grounds. Only two require discussion, the affirmative defense of failure to exhaust administrative remedies and the merits of the incident involving the letter from Senator Harkin.

The Prison Litigation Reform Act ("PLRA") requires state prisoners to first take their complaints about prison conditions to prison administrators where prisoners are afforded a procedure to do so.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, ___, 127 S. Ct. 910, 918-19 (2007). "[A]n inmate must exhaust administrative remedies *before* filing suit. .

. ." Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003)(emphasis original). If exhaustion "[i]s not completed at the time of filing, dismissal is mandatory." Id.[1]

The only administratively exhausted claim before the Court is that concerning the opening of the letter to Mr. Mallory from Senator Harkin. Mr. Mallory did not appeal the grievance officer's decision denying his grievance concerning the handling of the mail from the hospital. Except for the incident concerning Senator Harkin's letter, Mr. Mallory did not submit any grievances concerning the opening of mail outside of his presence until after this lawsuit was filed, nor did he appeal the resolution of those grievances.

Assuming the opening of the letter from Senator Harkin outside of Mr. Mallory's presence could be an event of constitutional magnitude, the only evidence in the record is that the letter was opened by mistake by Ms. Webb. Ms. Webb promptly called Mr. Mallory to the mailroom to explain what had happened. Mistake was the conclusion of the grievance officer. There is nothing beyond Mr. Mallory's unsubstantiated allegation in his grievance to indicate otherwise. That Ms. Webb brought the matter

---

[1] In Bock, the United States Supreme Court held (1) inmates are not required to specifically plead or prove exhaustion in their complaints, failure to exhaust is an affirmative defense; (2) the sufficiency of an inmate's exhaustion should be resolved with reference to the actual prison grievance process; and (3) exhaustion of some but not all claims does not require dismissal of the entire case. 549 U.S. at ___, 127 S. Ct. at 921, 923, 924-26.

to Mr. Mallory's attention is inconsistent with improper motive on her part. There is no indication that the incident interfered with Mr. Mallory's ability to communicate with Senator Harkin or other federal or state legislators.

In the context of mail from an inmate's attorney, the Eighth Circuit has agreed with other courts that "an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or access to the courts, does not give rise to a constitutional violation." Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997)(quoting Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990)). The same principles should apply to a letter from a legislator. Absent evidence of improper motive or resulting interference with the ability to correspond with a legislator, there is no constitutional violation. The summary judgment record contains no such evidence.

From Mr. Mallory's grievance and Mr. Richards' response, it is evident IDOC policy was to treat correspondence from legislators as privileged to be opened only in the presence of the inmate. (Def. App. at 9, 11). Violation of the policy was the thrust of plaintiff's grievance. (Def. App. at 8-9). There is, however, "no § 1983 liability for violating prison policy." Gardner, 109 F.3d at 430.[2]

---

[2] Mr. Mallory's transfer from CCF moots his requests for declaratory and injunctive relief with respect to the handling of
(continued...)

**IV.**

**RECOMMENDATION AND ORDER**

IT IS RESPECTFULLY recommended that for the foregoing reasons, defendants' motion for summary judgment should be **granted** and plaintiff's complaint should be dismissed.

IT IS ORDERED written objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), must be filed by **October 20, 2008.** Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

---

[2](...continued)
mail at CCF. See Owens v. Isaac, 487 F.3d 561, 564 (8th Cir. 2007)(citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1995)).

IT IS SO ORDERED.

Dated this 30th day of September, 2008.

```
                              _____
                              ROSS A. WALTERS
                              UNITED STATES MAGISTRATE JUDGE
```